**UNITED STATES of America,
Plaintiff,**

v.

**NATIONAL AMUSEMENTS, INC. and
Hoyts Cinemas Corporation,[1]
Defendants.**

**No. CIV. A. 00–12567–WGY.**

United States District Court,
D. Massachusetts.

Aug. 22, 2001.

---

1. On June 13, 2001, this Court consolidated Civil Action No. 00–12567–WGY, in which Hoyts Cinemas Corporation was the defendant, and Civil Action No. 00–12568–WGY, in which National Amusements, Inc. was the defendant, into Civil Action No. 00–12567–WGY.

Anne G. Depew, Assistant U.S. Attorney, Michael J. Pineault, Boston, MA, for plaintiff.

Deborah S. Burstein, Michael J. Malone, Paul Straus, King & Spalding, New York, NY, John T. Haggerty, Law Offices of John T. Haggerty, Charlestown, MA, for defendant.

James R. Carroll, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for co–defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. Introduction

The Attorney General brings suit in the name of the United States, pursuant to 42 U.S.C. § 12188(b)(1)(B),[2] against National Amusements, Inc. ("National Amusements") and Hoyts Cinemas Corporation ("Hoyts") (collectively, "the Cinemas"), alleging that the Cinemas are violating Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189 (ADA §§ 301–309), because they constructed and operate stadium-style theaters that deny equal access to persons who use wheelchairs. The complaints, which are almost identical in substance, set forth two counts: (1) the Cinemas have failed to design and construct facilities that are readily accessible to, and usable by, individuals with disabilities, in violation of ADA § 303, 42 U.S.C. § 12183(a)(1), and its implementing regulations, specifically section 4.33.3 of the ADA Accessibility Guidelines (Count I); and (2) the Cinemas have failed to provide individuals in wheelchairs full and equal enjoyment of goods, services, and facilities in violation of ADA § 302, 42 U.S.C. § 12182 (Count II).

On March 23, 2001 and March 26, 2001, National Amusements and Hoyts, respectively, moved to dismiss both counts of the complaints. This Court held a hearing on the Cinemas' motions to dismiss on May 17, 2001. At the motion hearing, the Court denied the Cinemas' motions to dismiss Count I of the complaints, and took under advisement the motions to dismiss Count II of the complaints. This memorandum and order sets forth the Court's holding and reasoning as to Count II of the complaints.

## II. Factual Background [3]

National Amusements and Hoyts are both Massachusetts corporations. Compl. ¶ 8. Since 1997, National Amusements has designed, constructed, and now operates more than fifteen stadium-style motion picture theater complexes in the United States, six of which are located in Massachusetts. Nat'l Amusements Compl. ¶¶ 2, 10. Since 1997, Hoyts has designed, constructed, and now operates more than twenty-five stadium-style motion picture theater complexes in the United States, three of which are located in Massachusetts. Hoyts Compl. ¶¶ 2, 10. Both Cinemas have at least one additional stadium-style theater currently under construction and intend to design, build, and operate other stadium-style theaters throughout the United States in the future. Compl. ¶ 11.

These stadium-style theaters have two types of seating: stadium seating and traditional seating. *Id.* ¶¶ 12–13. Most of the seats in the stadium-style theaters are stadium-style; a much smaller number of the seats are traditional-style. *Id.* In stadium-style seating, each row of seats is located on a riser that is elevated about

---

2. Section 12188(b)(1)(B) provides that:

 If the Attorney General has reasonable cause to believe that—
 (i) any person or group of persons is engaged in a pattern or practice of discrimination under this subchapter; or
 (ii) any person or group of persons has been discriminated against under this subchapter and such discrimination raises an issue of general public importance,

the Attorney General may commence a civil action in any appropriate United States district court.

42 U.S.C. § 12188(b)(1)(B).

3. Because the complaints are practically identical, the Court uses "Compl." to refer to both complaints. When it is necessary to distinguish between the two complaints because of their differing factual allegations, the individual complaint is specified.

twelve to eighteen inches higher than the riser immediately in front of it. *Id.* ¶ 12. The stadium seats also tilt. *Id.* As a result of the rise and tilt, users of stadium-style seats have lines of sight to the motion picture screen that are unobstructed by the heads of persons seated in the rows ahead of them. *Id.* In contrast, the traditional seats are placed on a flat and gradually sloping floor or on low six-inch risers. *Id.* ¶ 13. The traditional seats are located in the front of the theater auditorium so that they are closer to the screen and at a lower level than the stadium seats. *Id.* Consequently, "traditional seats provide inferior lines of sight to the screen than do stadium seats." *Id.*

Most of the Cinemas' stadium-style theaters allow access to the stadium seating only by climbing one or more steps, providing persons in wheelchairs with no access to the stadium-style seating. *Id.* ¶ 14. Thus, in most of the Cinemas' theaters, wheelchair accessible seating is provided only in the traditional-style seating section of the theater, which is closer to the screen and at a lower elevation than the stadium-style seating sections. *Id.* ¶ 15. As a result, persons in wheelchairs are "relegated to the worst seats in the auditoriums." *Id.*

## II. The ADA and Its Regulations

### A. *Sections 302 and 303 of the ADA*

Title III of the ADA, 42 U.S.C. §§ 12181–12189 (ADA §§ 301–309), prohibits discrimination against the disabled by public accommodations. Section 301 of the ADA defines "public accommodations" to include private commercial facilities such as movie theaters. 42 U.S.C. § 12181(2), (7)(C).

Section 302 of the ADA sets forth the general rule that no place of public accommodation shall discriminate against an individual on the basis of her disability:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Section 302 of the ADA also sets forth general prohibitions on discrimination against the disabled in the form of: (1) denying individuals on the basis of a disability the opportunity to "participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity," *id.* § 12182(b)(1)(A)(i); (2) affording individuals on the basis of a disability with the "opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals," *id.* § 12182(b)(1)(A)(ii); and (3) providing individuals on the basis of a disability "with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals," *id.* § 12182(b)(1)(A)(iii). Section 302 of the ADA also mandates integrated settings for individuals with a disability: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." *Id.* § 12182(b)(1)(B).

Section 303 of the ADA governs the construction of new, and the alteration of existing, public accommodation facilities. Subsection (a), which specifically regulates the construction of new facilities, defines discrimination as:

[A] failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are

readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter[.]

*Id.* § 12183(a)(1). In contrast, subsection (b) governs the alteration of *existing* buildings. As the Attorney General alleges that the Cinemas' theaters were designed and constructed for first occupancy after January 26, 1993, Compl. ¶ 2, section 303(a) of the ADA, which governs new construction, states the applicable statutory standard for this case. *See* 28 C.F.R. § 36.401(a).

B. *The Regulatory Framework of the ADA*

Congress entrusted the Attorney General to "issue regulations ... to carry out the provisions of" Title III, including standards that are applicable to facilities covered under ADA § 302. ADA § 306(b), 42 U.S.C. § 12186(b). Congress further provided that the Architectural and Transportation Barriers Compliance Board ("the Access Board"),[4] should also issue minimum guidelines to supplement the Attorney General's regulations. ADA § 504(a), 42 U.S.C. § 12204(a). The Access Board's supplemental guidelines should establish "additional requirements ... to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities." ADA § 504(b), 42 U.S.C. § 12204(b). Congress further specified that the Attorney General's regulations must be consistent with the Access Board's

minimum guidelines and requirements. ADA § 306(c), 42 U.S.C. § 12186(c).

Pursuant to sections 306 and 504 of the ADA, the Attorney General and the Access Board issued regulations and guidelines. The Access Board provided notice and comment for its proposed ADA guidelines in early 1991. 56 Fed.Reg. 2296 (Jan. 22, 1991). After reviewing the relevant commentary, the Access Board issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") six months later. 56 Fed.Reg. 35,408 (July 26, 1991). Similarly, the Attorney General provided notice and comment for his proposed regulations in early 1991, 56 Fed.Reg. 7452 (Feb. 22, 1991), and promulgated his final Title III regulations six months later, 56 Fed.Reg. 35,544 (July 26, 1991).

The Attorney General adopted the Access Board's ADAAG in their entirety into his final regulations as the "Standards for Accessible Design." *See* 28 C.F.R. pt. 36, App. A. Relevant to this case, section 36.406 of the Attorney General's regulations specifically provides that new construction shall comply with the Access Board's ADAAG. 28 C.F.R. § 36.406. The specific ADAAG regulation at issue here is section 4.33.3. It provides:

Wheelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities à choice of admission prices and lines of sight comparable to those for members of the general public. They shall adjoin an accessible route that also serves as a means of egress in case of emergency. At least one companion fixed seat shall be provided next to each wheelchair seating

4. Congress created the Access Board in 1973 for the purpose of ensuring compliance with the Architectural Barriers Act of 1968, 42 U.S.C. §§ 4151–4157, which regulates accessibility to federally funded buildings. 29 U.S.C. § 792. *See generally A History of the Board, at* http://www.access-board.gov/about/boardhistory.htm.

area. When the seating capacity exceeds 300, wheelchair spaces shall be provided in more than one location. Readily removable seats may be installed in wheelchair spaces when the spaces are not required to accommodate wheelchair users.

EXCEPTION: Accessible viewing positions may be clustered for bleachers, balconies, and other areas having sight lines that require slopes of greater than 5 percent. Equivalent accessible viewing positions may be located on levels having accessible egress.

28 C.F.R. pt. 36, App. A, § 4.33.3 (emphasis omitted).

In Count I of the complaints, the Attorney General alleges that the Cinemas are violating ADA § 303 because they have failed to comply with ADAAG § 4.33.3 on the following two grounds:

[1] People with physical disabilities who use wheelchairs are not provided lines of sight comparable to those for members of the general public; and/or

[2] In the majority of the stadium-style theaters, the wheelchair areas are not an integral part of the fixed stadium-style seating plan.

Compl. ¶ 20a. As indicated above, the Court, on May 17, 2001, denied the Cinemas' motions to dismiss this count of the complaints. Thus, the Court does not now decide whether the Cinemas are in violation of ADAAG § 4.33.3. The Court turns to Count II of the complaints.

## III. Analysis

### A. *Standard of Review*

██ Dismissal is appropriate "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gib-*

*son,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 [1957] ). In making this determination, the Court should "take the allegations in the complaint as true and grant all reasonable inferences in favor of the plaintiff." *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 988 (1st Cir.1992) (citing *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 20 [1st Cir. 1989] ).

██ Nonetheless, the standard for dismissal is not without bite. In taking plaintiffs' allegations as true, the Court may "eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" *Dartmouth Review,* 889 F.2d at 16 (quoting *Chongris v. Bd. of Appeals,* 811 F.2d 36, 37 [1st Cir.1987] ). Moreover, plaintiffs must set forth in their complaints "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." *Id.* (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 [1st Cir.1988] [internal quotation marks omitted] ).

### B. *Count II*

Count II of the complaints alleges a violation of sections 302(a), 302(b)(1)(A), and 302(b)(1)(B) of the ADA on the following grounds:

[1] by subjecting individuals with disabilities who use wheelchairs to a denial of the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages and/or accommodations of [the Cinemas'] stadium-style theaters[, 42 U.S.C. § 12182(a), (b)(1)(A)(i) ];

[2] by affording individuals with disabilities who use wheelchairs with the opportunity to participate in or benefit from a good, service, advantage and/or accommodation of [the Cinemas'] stadium-style theaters that is not equal to

that afforded to other individuals[, 42 U.S.C. § 12182(a), (b)(1)(A)(ii);]

[3] by providing individuals with disabilities who use wheelchairs with a good, service, facility, privilege, advantage and/or accommodation of [the Cinemas'] stadium-style theaters that is different or separate from that provided to other individuals[, 42 U.S.C. § 12182(a), (b)(1)(A)(iii); and]

[4] by failing to provide the goods, services, facilities, privileges, advantages, and/or accommodations of its stadium-style theaters to individuals with disabilities who use wheelchairs in the most integrated setting appropriate to the needs of the individual[, 42 U.S.C. § 12182(a), (b)(1)(B) ].

Compl. ¶¶ 24–25.

▮ The Cinemas argue that the Attorney General's claim under ADA § 302 should fail as matter of law because Congress designed the ADA so that restrictions on new construction contained in Title III of the ADA would be enforced through a specific regulatory framework rather than through the broad language of the general prohibitions set forth in the statute. Hoyts Mem. at 18; Nat'l Amusements Mem. at 17–19. Thus, according to the Cinemas, the Attorney General cannot state a claim under the general prohibitions of ADA § 302 for discriminatory new construction absent a violation of the specific regulations set forth by the Attorney General and the Access Board (which, in this case, is ADAAG § 4.33.3).

The Attorney General argues, however, that ADA § 302 sets forth protections that are independent and distinct from the requirements of ADA § 303. The Attorney General maintains that ADA § 302 is broader in scope than ADA § 303 because, unlike ADA § 303, it covers not only facilities but also goods, services, and accommodations. Pl.'s Opp'n at 18. Accordingly,

the Attorney General maintains that the Cinemas' interpretation of ADA § 302 would render it meaningless, counter to proper statutory construction. *Id.* at 18–19.

1. *The Text*

Both the statutory language and structure of the ADA support the Cinemas' interpretation. Several sections of Title III reveal Congress's intent to have the specific regulations exclusively set forth the requirements for architectural design issues.

First, Congress recognized the need for, and consequently created, a complex regulatory scheme for the enforcement of Title III obligations with respect to the design of a structure. Congress explicitly directed the Access Board to issue guidelines in order to implement Title III. ADA § 504, 42 U.S.C. § 12204. Congress provided that the Access Board's guidelines "shall establish additional requirements, consistent with this chapter, *to ensure that buildings,* facilities, rail passenger cars, and vehicles *are accessible, in terms of architecture and design,* transportation, and communication, to individuals with disabilities." ADA § 504(b), 42 U.S.C. § 12204(b) (emphasis added). Congress also provided that the Attorney General's regulations must be consistent with the Access Board's guidelines. ADA § 306(c), 42 U.S.C. § 12186(c). These statutory provisions reveal Congress's intent that compliance with the Attorney General's and Access Board's design standards for new construction would be sufficient to satisfy Title III obligations with respect to the design of a structure. *Indep. Living Res. v. Or. Arena Corp.,* 982 F.Supp. 698, 746 (D.Or.1997), *supplemented by* 1 F.Supp.2d 1159 (D.Or.1998).

Second, section 306(d) of the ADA strengthens this conclusion because it reveals Congress's intent *at all times* to have regulations set forth standards that, if met, would satisfy Title III obligations with respect to the design of a structure. In section 306(d), Congress provided a default set of standards that would apply to the construction of new facilities in case the Attorney General delayed the passage of its regulations:

> If final regulations have not been issued pursuant to this section, for new construction or alterations ... compliance with the Uniform Federal Accessibility Standards in effect at the time the building permit is issued shall suffice to satisfy the requirement that facilities be readily accessible to and usable by persons with disabilities as required under [ADA § 303, 42 U.S.C. § 12183], except that, if such final regulations have not been issued one year after the Architectural and Transportation Barriers Compliance Board has issued the supplemental minimum guidelines required under [ADA § 504(a), 42 U.S.C. § 12204(a)], compliance with such supplemental minimum guidelines shall be necessary to satisfy the requirement that facilities be readily accessible to and usable by persons with disabilities prior to issuance of the final regulations.

42 U.S.C. § 12186(d). The Court infers from ADA § 306(d) that Congress intended that the Attorney General's regulations and the Access Board's guidelines, when passed, would similarly set forth the standards, which, if followed, would be sufficient to satisfy Title III obligations with respect to the design of a structure. *Indep. Living Res.*, 982 F.Supp. at 746; *Caruso v. Blockbuster–Sony Music Entm't Ctr.*, 968 F.Supp. 210, 216–17 (D.N.J.1997), *aff'd in part and rev'd in part on other grounds*, 193 F.3d 730, 736–37 (3d Cir. 1999).

Third, section 303(a)(1) of the ADA requires that new construction must be "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection *in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*" 42 U.S.C. § 12183(a)(1) (emphasis added). The Court also infers from this that Congress intended compliance with these regulations to be sufficient for compliance with the ADA. *Indep. Living Res.*, 982 F.Supp. at 746.

### 2. *Regulatory Structure*

The regulations implementing Title III also support the Cinemas' position that compliance with the regulations for new construction is alone sufficient to satisfy Title III obligations with respect to the design of a new structure.

First, the Access Board's regulations, which the Attorney General adopted in their entirety, define "accessible" as "a site, building, facility, or portion thereof that complies with *these guidelines.*" 28 C.F.R. pt. 36, App. A, § 3.5. This regulation reveals that compliance with ADAAG *is* sufficient to establish that a new building is accessible and hence nondiscriminatory. The Court infers from this that compliance with these standards is sufficient to satisfy both sections 303 and 302 of the ADA. *See Indep. Living Res.*, 982 F.Supp. at 746. To hold otherwise would render compliance with these regulations meaningless, because a fully compliant structure would always be subject to a claim under ADA § 302.

Second, the Attorney General's own regulations indicate that when there is a specific regulation that governs a particular design issue, that specific provision is determinative as to whether there is a viola-

tion of the more general regulatory and statutory provisions. The Attorney General's regulations include both general and specific prohibitions. The general prohibitions of the regulations are mirror images of the general prohibitions contained in ADA § 302. Specifically, the general regulations prohibit the following: (1) discriminating against an individual on the basis of a disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation," 28 C.F.R. § 36.201(a); *accord* 42 U.S.C. § 12182(a); (2) denying "the opportunity of the individual [on the basis of a disability] ... to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation," 28 C.F.R. § 36.202(a); *accord* 42 U.S.C. § 12182(b)(1)(A)(i); (3) affording individuals on the basis of a disability "with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage or accommodation that is not equal to that afforded to other individuals," 28 C.F.R. § 36.202(b); *accord* 42 U.S.C. § 12182(b)(1)(A)(ii); (4) providing individuals on the basis of a disability "with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals," 28 C.F.R. § 36.202(c); *accord* 42 U.S.C. § 12182(b)(1)(A)(iii); and (5) denying individuals on the basis of a disability "the most integrated setting appropriate to the needs of the individual," 28 C.F.R. § 36 .203(a); *accord* 42 U.S.C. § 12182(b)(1)(B), or "an opportunity to participate in such programs or activities that are not separate or different," 28 C.F.R. § 36.203(b); *accord* 42 U.S.C. § 12182(b)(1)(C).

The Attorney General argues that because the Cinemas' theaters are in violation of these general regulatory provisions, he should be able to state a claim under ADA § 302 absent a violation of a specific regulation. Pl.'s Opp'n at 17–19; Mot. Hr'g Tr. at 19. The Court disagrees.

The general prohibitions contained in the regulations explicitly describe the relationship between these general prohibitions set forth in subpart B of the regulations and the specific prohibitions set forth in subparts C and D of the regulations:

> Subpart B of this part sets forth the general principle of nondiscrimination applicable to all entities subject to this part. Subparts C and D of this part provide guidance on the application of the statute to specific situations. The specific provisions, including the limitations on those provisions, control over the general provisions in circumstances where both specific and general provisions apply.

28 C.F.R. § 36.213.

Applying this principle to the facts of this case, the Court concludes that the specific provisions of ADAAG control over the general provisions set forth in 28 C.F.R. §§ 36.201–.203. Indeed, the Attorney General, in explaining section 36.213 in its preamble to the regulations, confirms this conclusion:

> One illustration of this principle is its application to the obligation of a public accommodation to provide access to assembly areas, such as theaters or sports arenas, by persons who use wheelchairs. The general requirement, established in subpart B by § 36.203, is that a public accommodation must provide its services (in this case, the use of the assembly area) to individuals with disabilities in the most integrated setting appropriate. This general requirement would appear to categorically prohibit ... "Seating for persons in wheelchairs at the back of the assembly area." This requirement, however, must be read in conjunction with § 36.308, "Seating in assembly areas."

*Section 36.203 does not specify how a public accommodation should make its services available. Those provisions are in § 36.308 of subpart C, which establishes specific minimum requirements for accessible seating in assembly areas.*

56 Fed.Reg. at 7465 (emphasis added), *reprinted in* 28 C.F.R. pt. 36, App. B. The specific provisions point this Court to ADAAG § 4.33.3 for the wheelchair seating requirements for the new construction of assembly areas. *See* 28 C.F.R. § 36.308(b) (stating that the provision of wheelchair seating in assembly areas in newly constructed areas is governed by subpart D, which includes 28 C.F.R. § 36.406); *id.* § 36.406(a) (stating that new construction must comply with ADAAG regulations). Thus, the regulations themselves indicate that ADAAG § 4.33.3 is determinative as to whether there is a violation of the general regulatory and statutory provisions.

The Attorney General asserts, however, that its regulatory structure supports its argument that ADA § 302 and its general regulatory provisions can apply to design issues absent a specific regulatory violation. The Attorney General avers that 28 C.F.R. § 36 .213 provides that when there is no applicable specific regulatory provision, one should look to the general standards: "[I]f the Court concludes that the specific standard of 4.33.3 doesn't cover this then . . . you back your way up to the

general standards." Mot. Hr'g Tr. at 19. The Court cannot agree with the Attorney General's application of 28 C.F.R. § 36.213 in this instance.

The Attorney General's suggestion that compliance with the terms of ADAAG § 4.33.3 somehow makes that regulation "inapplicable" and hence justifies reliance on the general regulations is flawed. Perhaps if there were *no* specific regulation governing wheelchair seating in assembly areas the Attorney General's argument would have some bite. Section 4.33.3 of the ADAAG regulations, however, *does* set forth the requirements for the placement of wheelchair locations in assembly areas. Thus, a specific regulations *is* applicable. Compliance with a specific regulation must mean something; the Court rejects the Attorney General's attempt to render such compliance entirely meaningless by opening it to challenge under general regulatory provisions. Moreover, the Court will not allow the Attorney General to circumvent the specific requirements set forth in the specific regulations under the guise of a violation of the general regulations.

 Thus, even the Attorney General's own regulations support the Cinemas' position that absent a violation of ADAAG § 4.33.3, the Attorney General cannot bring its claim under ADA § 302.[5]

### 3. *Policy Concerns*

Statutory and regulatory interpretation aside, the Attorney General's interpretation of sections 302 and 303 of the ADA

---

5. In a footnote, the Attorney General argues that it is entitled to deference if the Court concludes that ADA § 302 is ambiguous. Pl.'s Opp'n at 17 n. 20. The rule of deference provides that "if the statute is silent or ambiguous with respect to the specific issue," then courts should defer to an agency's interpretation of the statute if it is a "permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694

(1984), *examined in United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (prohibiting deference absent apparent delegation of authority by Congress to make law). As explained above, the Court concludes that Congress unambiguously intended compliance with the specific regulations of the Attorney General and the Access Board to be sufficient to satisfy the requirements under Title III of the ADA with respect to new construction. But even if there were

would not only unduly burden the ability to construct new facilities by allowing the government to impose retroactive restrictions on new construction (which would not be subject to notice and comment), but also would place the judiciary in the uncomfortable position of having to fashion complex, technical rules of design under the guise of statutory interpretation.

The interpretation of the ADA proposed by [the Attorney General] .... would allow any person to file an action contending that, in the opinion of this particular plaintiff, a design feature ought to have been included .... The courts are ill-equipped to evaluate such claims and to make what amount to engineering, architectural, and policy determinations as to whether a particular design feature is feasible and desirable. In addition, although plaintiffs would limit such claims to design issues that [the Attorney General] and the Access Board have not expressly addressed, the courts often would have no way of knowing whether the Access Board had considered enacting such a requirement, but decided against it. It also would be difficult for anyone to design a new arena or other structure if the design requirements are subject to being changed retroactively.

*Indep. Living Res.*, 982 F.Supp. at 746; *Caruso*, 968 F.Supp. at 217 ("Considerations of due process and the realities of building large, expensive facilities counsel against the courts making architectural, design or engineering judgments in the guise of statutory interpretation after construction of a project is completed."). The Court declines to open the door to such consequences.

### 4. *The Attorney General's Remaining Arguments*

The Attorney General's suggestion that the Cinemas' interpretation renders ADA § 302 meaningless is misguided. The Court agrees with the Attorney General that sections 302 and 303 of the ADA are independent and set forth distinct prohibitions. Nonetheless, in the context of new construction, the Court concludes that Congress intended violations of either section to turn on compliance with specific regulations set forth by the Attorney General and the Access Board.

The Court's holding does not, as .the Attorney General maintains, render ADA § 302 meaningless. Indeed, the Attorney General's own hypothetical reveals this. The Attorney General sets forth the following hypothetical:

---

ambiguity, this Court would not defer to the Attorney General's interpretation here. First, an agency's litigating position, which is in the nature of a "post hoc rationalization" rather than the result of the official exercise of rulemaking authority, is not entitled to *Chevron* deference. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *see also Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (allowing deference to agency's opinion letter only to extent agency's opinion is persuasive). Second, under either *Chevron* or the less deferential standard of *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), this Court would decline to give the Attorney General's interpretation any deference or "re-

spect" because the Court concludes that the Attorney General's interpretation of ADA § 302 is inconsistent with the language of the statute.

Nor does reference to the regulations assist the Attorney General. The Court cannot defer to the Attorney General's interpretation of his regulations because it is inconsistent with the terms of the regulations themselves. *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150–51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); *Reich v. Simpson, Gumpertz & Heger, Inc.*, 3 F.3d 1, 2 (1st Cir.1993); *see also Christensen*, 529 U.S. at 588, 120 S.Ct. 1655 (holding that *Auer* deference is only warranted when the regulation is ambiguous).

Under [the Cinemas'] reading of the ADA, [they] would be permitted to violate the anti-discriminatory principles of section 302 at will so long as [their] theaters complied with the technical architectural guidelines set forth in section 303 and its implementing regulation. Such a reading would eviscerate key provisions of section 302 and lead to absurd results. For example, [the Cinemas'] reading would require a facility to be designed and constructed in full compliance with all relevant technical guidelines under the ADA, but allow an owner or operator simply to deny persons who use wheelchairs access to the facility. Pl.'s Opp'n at 19. The Attorney General misapplies the Cinemas' interpretation.

The Cinemas argue that ADA § 302 cannot provide a cause of action absent a regulatory violation only when the statutory violation is based on the failure of new construction to be in compliance with the ADA. Thus, in the hypothetical, the Attorney General *could* state a claim under ADA § 302 against the Cinemas for discrimination on the basis of its employees' behavior *but not* on the basis of inaccessible design. This case is different from the hypothetical because the Attorney General's allegations of discrimination all stem from the Cinemas' alleged failure to design and construct theaters that are accessible to individuals in wheelchairs. *See* Compl. ¶ 26. In such circumstances, the specific regulations set forth in ADAAG determine whether the Cinemas' design and construction is in fact discriminatory. Thus, section 302 of the ADA is not rendered meaningless; it is simply inapplicable[6] to the Cinemas' conduct absent a regulatory violation. *Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*, 142 F.Supp.2d 1293, 1298 n. 3 (D.Or.2001) (refusing to allow claim under ADA § 302 when there was no regulatory violation).

## IV. Conclusion

For the foregoing reasons, the Court grants National Amusements's Motion to Dismiss [Civ. A. No. 00–12568–WGY, Docket No. 5] and Hoyts's Motion to Dismiss [Civ. A. No. 00–12567–WGY, Docket No. 3] Count II of the complaints to the extent that Count II is based on anything other than a violation of ADAAG § 4.33.3.

---

6. The Attorney General's reference to *Martin v. PGA Tour, Inc.*, 204 F.3d 994 (9th Cir. 2000), *aff'd*, 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001), reveals the flaw in his reasoning. In *Martin*, the court considered whether the PGA violated ADA § 302(b)(2)(A)(ii), which prohibits the failure to make reasonable accommodations, when it required a disabled golfer to walk during tournaments rather than drive a cart. *Id.* at 999. The court was not concerned with the physical layout of golf courses but rather with how the PGA treated disabled golfers. Thus, *Martin* demonstrates that this Court's holding would not render ADA § 302 meaningless.