**OREGON PARALYZED VETERANS OF AMERICA, a non-profit corporation, Kathy Stewmon, Tina Smith, and Kathy Braddy, Plaintiffs,**

v.

**REGAL CINEMAS, INC., and Eastgate Theatre Inc., d/b/a Act III Theaters, Inc., Defendants.**

**No. CIV. 00–485–KI.**

United States District Court,
D. Oregon.

April 30, 2001.

therefore, conclude that it also should be dismissed.

Robert W. Pike, Portland, OR, Kathleen L. Wilde, Oregon Advocacy Center, Portland, OR, David B. Gray, Portland, OR, for Plaintiff.

Laura M. Franze, M. Brett Burns, Andrew M. Gould, Akin, Gump, Strauss, Hauer & Feld., L.L.P., Dallas, TX, and Karen O'Kasey, Nathan A. Sykes, Schwabe, Williamson & Wyatt, P.C., Pacwest Center, Portland, OR, for Defendants.

## OPINION

KING, District Judge.

Before the court is the motion for summary judgment (# 35) by plaintiffs Oregon Paralyzed Veterans of America, Kathy Stewmon, Tina Smith, and Kathy Braddy. Also before the court is the motion for summary judgment (# 37) by defendants Regal Cinemas, Inc. and Eastgate Theatre, Inc., dba Act III Theaters, Inc. (collectively, "Regal"). For the reasons set forth below, I grant defendants' motion for summary judgment and deny plaintiffs' motion for summary judgment.

## FACTS

In 1995, Regal began constructing "stadium-style" movie theaters. Stadium-style theaters roughly emulate the seating configuration of a typical sports stadium, providing stepped-seating that rises at a slope of well over five percent. This elevated seating configuration reduces the obstructed view or line-of-sight problems that occur, for example, when a tall individual sits in front of a shorter individual.

The stairs that support the stadium-style seating configurations require a steep grade that generally cannot be navigated by wheelchair-using patrons. Wheelchair-accessible seating is located in front of the tiered seats amidst the seating for the general public in the first five rows of seats. The wheelchair seat locations have an unobstructed view of the movie screen.

In this lawsuit, plaintiffs challenge the wheelchair seat locations in theaters within six theater complexes in northern Oregon owned by Regal. These six complexes have between nine and sixteen theaters and the majority of the theaters have less than 250 seats. Certificates of occupancy and other approvals were issued for each of the theaters by local and state building officials.

Plaintiffs allege that the wheelchair seat locations are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"). They also assert a claim under an Oregon public accommodation law (ORS 659.425(3)) and the common law tort of negligence.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed,* 173 F.3d 736, 739 (9th

Cir.), *cert. denied*, 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

## DISCUSSION

### I.  *ADA Claim*

As a "public accommodation," Regal's theaters are subject to the requirements of Title III of the ADA. The general rule of Title III provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Newly constructed facilities subject to the ADA must be "readily accessible to and usable by individuals with disabilities." *Id.*, § 12183(a)(1). Congress has directed the Department of Justice ("DOJ") to "flesh out" these general principles by "issu[ing] regulations ... that include standards applicable to facilities" covered by Title III. *Id.*, § 12186(b); *Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579, 580 (D.C.Cir.1997), *cert. denied*, 523 U.S. 1003, 118 S.Ct. 1184, 140 L.Ed.2d 315 (1998). DOJ fulfilled this responsibility by adopting guidelines promulgated by the Architectural and Transportation Barriers Compliance Board, known as the "Access Board." The Access Board is charged with "establish[ing] and maintain[ing] minimum guidelines and requirements for the standards issued pursuant to," Title III of the ADA. 29 U.S.C. § 792(b)(3)(B). The regulations adopted by the DOJ are known as the Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

One of the guidelines promulgated by the Access Board, and adopted by DOJ as its own regulation in 1991, states in relevant part as follows:

> Wheelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and *lines of sight comparable* to those for members of the general public.

28 C.F.R. Part 36, App. A, § 4.33.3 (emphasis added).[1]

At the center of this lawsuit is the meaning of "lines of sight comparable" in Section 4.33.3. Plaintiffs argue that these words impose a viewing angle standard such that wheelchair seating areas must be placed in the stadium seating portion of theaters and not just in the front rows of a theater that provide inferior and uncomfortable viewing angles. Defendants argue that these words do not impose a viewing angle standard and mean only that a patron in a wheelchair must be provided with an unobstructed view of the movie screen.

To date, the major court decisions that have construed "lines of sight comparable" in Section 4.33.3 have addressed the question of whether those words impose a requirement that wheelchair users not have their views obstructed by spectators who may stand in front of them. *Paralyzed Veterans*, 117 F.3d at 583–84 (holding that Section 4.33.3 does require auditorium owners to provide wheelchair areas that have lines of sight unobstructed by standing spectators); *Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 743 (D.Or.1997) (holding that Section 4.33.3 "does not purport to decide whether lines of sight over standing spec-

---

1. The State of Oregon's accessibility guidelines, contained in the Uniform Building Code ("UBC"), contain very similar requirements. UBC, § 1109.20.1.1.

tators are—or are not—necessary in order to comply with the ADA"); *Caruso v. Blockbuster–Sony Music Entertainment Ctr. at Waterfront,* 193 F.3d 730, 736 (3rd Cir.1999) (holding that Section 4.33.3 does not reach the issue of sight lines over standing spectators). Only one appellate decision has addressed the issue of whether "lines of sight comparable" requires stadium-style theaters to provide wheelchair-bound moviegoers with comparable viewing angles rather than unobstructed lines of sight. That case is *Lara v. Cinemark USA, Inc.,* 207 F.3d 783 (5th Cir. 2000).

In July 1998, DOJ filed in the *Lara* case an *amicus curiae* brief. In its brief, the DOJ announced a new interpretation of Section 4.33.3, based on its reading of the plain meaning of "comparable lines of sight." The interpretation required the following in stadium-style theaters: "wheelchair locations must be provided lines of sight in the stadium seating seats within the range of viewing angles as those offered to most of the general public in the stadium style seats, adjusted for seat tilt." Defendants' Exh. L, p. 8.

The district court granted summary judgment in favor of the plaintiffs and the defendant appealed that decision. On appeal, DOJ again filed an *amicus* brief espousing its new interpretation of Section 4.33.3 with respect to wheelchair locations in stadium-style theaters.

On April 6, 2000, the Fifth Circuit issued its opinion in the *Lara* case and reversed the district court. On October 16, 2000, the Supreme Court denied the plaintiffs' petition for writ of certiorari. *Lara v. Cinemark USA, Inc.,* —— U.S. ——, 121 S.Ct. 341, 148 L.Ed.2d 274 (2000).

Notwithstanding the Fifth Circuit's rejection of the DOJ's litigating position in *Lara,* plaintiffs essentially adopt DOJ's litigating position as their own in this case.

They ask that I view DOJ's litigating position in the *Lara* case as its latest interpretation of Section 4.33.3 and also ask that I pay deference to that interpretation.

Before launching into a discussion of whether deference is due to DOJ's interpretation of Section 4.33.3 as announced in the *Lara v. Cinemark* litigation, I believe it is important to emphasize that neither the district court nor the Fifth Circuit analyzed the issue in such a way. The district court reasoned that:

> [T]he statute and regulation appear to be clear and unambiguous, and the words thereof can be interpreted in their common, ordinary, English language, dictionary meaning. "Comparable" simply means capable of being compared; equivalent or similar. The Plaintiffs contend that this language means that the wheelchair-bound patrons should and must be afforded seating providing lines of sight at least similar to those afforded to the average person of the theater rather than being relegated to the worst seats in the house. * * * The Court agrees with the Plaintiffs' interpretation of the word "comparable" as used in the regulation. . . .

*Lara v. Cinemark USA, Inc.,* 1998 WL 1048497, \*2 (W.D.Tex.).

On this basis, and without any discussion of the history of Section 4.33.3, the court concluded that the viewing angles provided by the wheelchair seating at issue in the case did not provide "comparable lines of sight" as required by Section 4.33.3. *Id.*

In rejecting the district court's "plain meaning" analysis, the Fifth Circuit in *Lara* examined the history of Section 4.33.3. The court noted that, unlike questions of "viewer obstruction," which DOJ and the Access Board explicitly considered before issuing Section 4.33.3, questions re-

garding "viewing angle" did not arise until well after DOJ adopted Section 4.33.3. *Lara*, 207 F.3d at 788. The court went on to note that such a distinction is evident in DOJ's 1994 Technical Assistance Manual (and its supplement) which explicitly requires certain auditoria to provide "lines of sight over spectators who stand," but says nothing about viewing angles. *Id.* The court also emphasized that the Access Board's recent (1999) proposed modifications to Section 4.33.3 were in the context of obstructed views rather than viewing angles and that the Access Board had considered in 1999 the possibility of amending Section 4.33.3 to add requirements that would codify DOJ's position that Section 4.33.3 imposes viewing angle standards in stadium-style theaters. *Id.* Finally, the court noted that, in other statutory contexts at the time DOJ adopted Section 4.33.3, the phrase "lines of sight" meant unobstructed view. *Id.* at 788–89. The court concluded:

> In light of the lack of any evidence that the Access Board intended section 4.33.3 to impose a viewing angle requirement, the Board's recent statement that it had not yet decided whether to adopt the DOJ's litigating position with respect to stadium-style theaters, and the common meaning of "lines of sight," we cannot conclude that the phrase "lines of sight comparable" requires anything more than that theaters provide wheelchair-bound patrons with unobstructed views of the screen.

*Id.* at 789.

As tempting as it is to rely on the "plain meaning" of the regulation, I find the rea-soning of the Fifth Circuit in *Lara* to be persuasive, given its reliance on the history of Section 4.33.3 and the context in which it was promulgated. The logic of the decision is amplified by plaintiff's acknowledgment that the stadium riser design was not adopted for movie theaters until 1995—four years after Section 4.33.3 was adopted by DOJ. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 3.

■ The *Lara* court's reasoning is also dispositive of plaintiffs' argument that I should show deference to DOJ's interpretation of Section 4.33.3.[2] An agency's interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Under this standard, the applicable analysis is similar to that applied to an agency's interpretation of an ambiguous statute under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Paralyzed Veterans*, 117 F.3d at 584 ("After all, *Chevron* requires a reviewing court to affirm a permissible (or reasonable) interpretation of an ambiguous statute, and we very much doubt that we would defer to an unreasonable agency interpretation of an ambiguous regulation."). Assuming DOJ's litigating position in the *Lara v. Cinemark* litigation is a suitable way to announce an interpretive rule, the Fifth Circuit's analysis in *Lara* demonstrates that it would be unreasonable and inconsistent with the history of Section 4.33.3 (including statements by the Access Board) to in-

---

**2.** I acknowledge defendants' argument that the viewing angle standard that plaintiff advocates is different from what DOJ asserted in the *Lara v. Cinemark* litigation and that DOJ has articulated different viewing angle standards at different times. Because I find that no viewing angle standard is imposed by Sec-tion 4.33.3, I do not reach this "moving target" argument. I do note, however, that the vague viewing angle standards cited in the record cry out for a detailed methodology that would be best developed and imposed through notice and comment rulemaking rather than through an interpretative rule.

terpret it to require stadium-style theaters to provide wheelchair-bound moviegoers with comparable viewing angles. *See Caruso*, 193 F.3d at 736 (rejecting DOJ's interpretation in 1994 Technical Assistance Manual because of indications that the agency had a different intent (based on comments by the Access Board) at the time Section 4.33.3 was promulgated); *Independent Living Resources*, 982 F.Supp. at 742 (same). Summary judgment is granted against plaintiffs' ADA claim.[3]

## II.   *Claim Under ORS 659.425(3)*

Plaintiffs allege that "[b]y failing to provide wheelchair seating with lines of sight that are comparable to that of the general public, Defendants have made a distinction, discrimination or restriction on Plaintiffs because they are disabled persons, in violation of ORS 659.425(3)." First Amended Complaint, ¶ 51. That statute provides: "It is an unlawful practice for any place of public accommodation, resort or amusement as defined in ORS 30.675, or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is a disabled person."

■ As defendants point out, the Honorable Donald C. Ashmanskas ruled in *Independent Living Resources* that this statute was not intended to provide a right to recover damages for deficiencies in the design of a structure and that "the language of the statute ... suggests active conduct of some sort, especially conduct that is targeted at a specific individual."

*Independent Living Resources*, 982 F.Supp. at 773. Likewise, the Honorable Robert E. Jones has ruled that the statute does not impose a "reasonable accommodation" requirement for public accommodations. *Sellick v. Denny's Incorporated*, 884 F.Supp. 388, 393 (D.Or.1995). As recently as January 2000, the Honorable Dennis J. Hubel relied on these decisions to dispose of a claim under ORS 659.425(3). *Alford v. City of Cannon Beach*, 2000 WL 33200554, *14–15 (D.Or. January 17, 2000). I am inclined to follow these decisions from this district and, accordingly, grant summary judgment against plaintiffs' claim under ORS 659.425(3).

## III.   *Negligence Claim*

■ Plaintiffs assert that "[d]efendants had a duty, imposed by federal and state law, to design, construct and operate their theaters in compliance with Title III of the ADA and the State Public Accommodations Law." First Amended Complaint, ¶ 58. However, in their response to defendants' motion for summary judgment, plaintiffs concede that "the ADA's regulatory scheme is broad enough to preclude Plaintiff from seeking recovery on a negligence claim for violation of the ADA." Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 18. Furthermore, based on the above analysis, the "public accommodation law" on which plaintiffs rely (ORS 659.425(3)) does not apply and, thus, cannot supply the duty element necessary for plaintiffs' negligence claim.

---

**3.** This ruling encompasses plaintiffs' argument that the wheelchair seats are not "an integral part of any fixed seating plan" in the theaters at issue. 28 C.F.R. Part 36, App. A, § 4.33.3. I do not read plaintiffs' First Amended Complaint to state such a theory of liability under the ADA. Regardless, the argument is belied by the Fifth Circuit's holding in *Lara* that, to locate wheelchair seating in the

non-stadium portion of seats used by the general public, does not violate the ADA. *Lara*, 207 F.3d at 789. I also reject plaintiffs' reliance on the "full and equal enjoyment" language in 42 U.S.C. § 12182(a). Instead, I subscribe to defendants' argument that compliance with ADAAG (the implementing regulations for the ADA) is compliance with the ADA itself.

Plaintiffs attempt to get around these problems by arguing in their opposition brief that it is actually the Uniform Building Code that supplies the necessary duty element. However, plaintiffs are unable to identify any particular building code standard, in effect at the time of the construction of the theaters, that was not satisfied. Plaintiffs' claim also suffers from the fact that none of plaintiffs can claim a physical injury. *See Alford,* 2000 WL 33200554, *19. Summary judgment is granted against plaintiffs' negligence claim.

## CONCLUSION

Based on the foregoing, the motion for summary judgment (# 35) by plaintiffs Oregon Paralyzed Veterans of America, Kathy Stewmon, Tina Smith, and Kathy Braddy is DENIED. The motion for summary judgment (# 37) by defendants Regal Cinemas, Inc. and Eastgate Theatre, Inc., dba Act III Theaters, Inc. is GRANTED.