Susan **MEINEKER** and Sybil
**McPherson**, Plaintiffs,

v.

**HOYTS CINEMAS CORPORATION**,
Defendant.

No. 5:98–CV–1526.

United States District Court,
N.D. New York.

Aug. 14, 2002.

Disability Advocates, Inc. (Timothy A.
Clune, of counsel), Albany, NY, for Plain-
tiffs.

King & Spaulding (Michael J. Malone, of
counsel), New York City, for Defendant.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. *INTRODUCTION*

On September 24, 1998, plaintiffs Susan
Meineker ("Meineker")[1] and Sybil
McPherson ("McPherson") (collectively
"plaintiffs") commenced the instant action
against defendant Hoyts Cinemas Corpo-
ration ("Hoyts") pursuant to Title III of
the Americans With Disabilities Act, 42
U.S.C. § 12101, *et seq.* ("ADA"). Plain-
tiffs filed an amended complaint on Febru-
ary 12, 1999, seeking declaratory and in-
junctive relief pursuant to 28 U.S.C.
§ 2201 and 42 U.S.C. § 12182, and attor-
neys' fees pursuant to 42 U.S.C. § 12205.

Defendant now moves for summary
judgment on all claims against it. Plaintiffs
oppose and cross-move for summary judg-
ment. Defendant opposes the cross-mo-
tion. Oral argument was heard on March
22, 2002, in Albany, New York. Decision
was reserved.

### II. *FACTS*

The facts in this case are relatively un-
disputed, and require only a brief recita-

---

1. Susan Meineker died on February 8, 2002.
Her estate has not been substituted as a party
to this action.

tion to set forth the basis for the resolution of the instant motion.

In 1997, Hoyts opened its new cinema at Crossgates Mall in Albany, New York (the "Crossgates theater"). The Crossgates theater consists of a complex of eighteen movie theaters on two levels. All eighteen theaters consist of a combination of seating on a flat floor below the screen, and "stadium-style" seating. Stadium-style seating consists of individual rows of seats placed on graduated tiers or steps. The stadium-style seating occupies, on average, approximately 70% of the available seating in the Crossgates theaters. In fourteen of the eighteen Crossgates theaters, where seating capacity is less than 300, there is no wheelchair seating in the tiered, stadium-style sections.

In the four theaters where seating capacity is greater than 300, wheelchair seating is located in several locations both on the flat floor and at the back of the stadium-style seats. For safety reasons, Crossgates has installed a railing to protect wheelchair patrons from the steep drop-off in front of the wheelchair seating at the rear of these theaters.[2] Each wheelchair position is adjoined by a companion seat in every theater. Patrons pay the same ticket price whether they sit in the stadium seating or in the floor seating.

At the time the Crossgates theaters were constructed, the floor seating for wheelchair patrons was located in the most undesirable part of the theaters. It was situated directly beneath the screen at the very front of the theaters. There was no seating for the general public located in front of the wheelchair seating. Subsequent to the commencement of this litigation, the wheelchair seating was renovated between November 2000 and March 2001. (Gaudet Aff. ¶ 10.) The wheelchair seating was relocated to the rear of the floor sec-

tion behind several rows of general public seating, and as close to the center of the theater as possible. (*Id.*)

Plaintiffs Susan Meineker and Sybil McPherson are disabled persons who ambulate by means of a wheelchair. Each patronized Hoyts Crossgates theater in late 1997, and each was required to sit in wheelchair seating which, at that time, was located directly under the screen at the very front of the theater. These seating locations were undesirable to plaintiffs. They had difficulty viewing the screen, and they suffered discomfort during the movies because they were forced to shift their bodies in their wheelchairs in order to crane their heads upward to view the movie. They commenced this action in 1998, alleging that the wheelchair seating configuration at the Crossgates theaters violates Title III of the ADA.

### III. *STANDARD OF REVIEW*

#### A. *Summary Judgment*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the

2. These railings are also required by local building code. (Gaudet Aff. ¶ 10.)

light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## IV. *DISCUSSION*

Plaintiffs claim that the wheelchair seating at the Crossgates theaters violates the ADA in that (1) wheelchair patrons are not offered lines of sight comparable to those offered to the general public because wheelchair seating is not provided in the stadium seating of fourteen of the theaters; (2) the wheelchair seating is not an "integral" part of the fixed seating plan because it is (a) clustered at the front of the floor area, and (b) located in "pens" or "corrals" in the rear corners of the stadium seating; (3) there is no wheelchair access to the stadium seating area in fourteen of the theaters; and (4) the wheelchair seating at the Crossgates theaters is "separate and unequal." [3] Each of these arguments is discussed below.

### A. *The Statutory and Regulatory Framework*

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Title III requires that newly constructed

facilities be "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable." 42 U.S.C. § 12183. Section 301 of the ADA defines "public accommodations" to include private commercial facilities such as movie theaters. 42 U.S.C. § 12181(7)(C). Section 303 of the ADA governs the construction of new facilities and the alteration of existing facilities.

Pursuant to these statutory provisions, the Department of Justice ("DOJ") has been instructed by Congress to "issue regulations ... to carry out the provisions of" Title III, including standards applicable to facilities covered by Title III. 42 U.S.C. § 12186(b). Standards contained in the DOJ regulations must "be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board" (the "Access Board"). 42 U.S.C. § 12186(c).

The Access Board is a federal agency that was created by the Rehabilitation Act of 1973 for the purpose of ensuring compliance with the Architectural Barriers Act of 1968. *See* 42 U.S.C. § 4151–4157. The Board is composed of 25 members: 13 public members appointed by the President, as well as officials of 12 federal agencies or departments. 29 U.S.C. § 792. In the ADA, Congress directed the Access Board to issue "minimum guidelines" to supplement the Board's existing Minimum Guidelines and Requirements for Accessible Design. 42 U.S.C. § 12204(a). After providing notice and comment, the Access Board issued its Accessibility Guidelines for Buildings and Facilities ("ADAAG" or the "Guidelines") in 1991.

---

**3.** In addition, plaintiffs argued at oral argument that the companion seating is inadequate; however the undisputed evidence is that Hoyts provides a companion seat for each wheelchair position. Accordingly, plaintiffs' arguments regarding the adequacy of companion seating are rejected.

Pursuant to its statutory authority under Title III, the DOJ has promulgated numerous regulations, see 28 C.F.R. §§ 36.101–36.608 (1998), one of which adopts the Access Board's guidelines as the DOJ's own Standards for New Construction and Alterations ("Standards"). See 28 C.F.R. § 36.406 (referring to 28 C.F.R. Part 36, App. A). Section 4.33.3 of the ADAAG provides that:

Wheelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public. They shall adjoin an accessible route that also serves as a means of egress in case of emergency. At least one companion fixed seat shall be provided next to each wheelchair seating area. When the seating capacity exceeds 300, wheelchair spaces shall be provided in more than one location. Readily removable seats may be installed in wheelchair spaces when the spaces are not required to accommodate wheelchair users.

EXCEPTION: Accessible viewing positions may be clustered for bleachers, balconies, and other areas having sight lines that require slopes of greater than 5 percent. Equivalent accessible viewing positions may be located on levels having accessible egress.

28 C.F.R. Part 36, App. A, § 4.33.3.

### B. *Comparable Lines of Sight*

█ The parties in this case have made numerous arguments and produced a voluminous record over what is, essentially, a very straightforward question—what is the meaning of the Guideline requirement that public assembly areas "provide people with physical disabilities . . . lines of sight comparable to those for members of the general public." As the resolution of the instant motions depends, in large part, upon the construction of this phrase, it is an appropriate place to begin the analysis.

Plaintiffs assert that the phrase must be interpreted in light of the mandate in Section 302 of the ADA that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, [etc.] of any place of public accommodation". 42 U.S.C. § 12182(a). In other words, the implementing regulation at issue in this case must be interpreted in light of the broader obligation to provide disabled persons with equal enjoyment of the Crossgates theaters. Equal enjoyment, in plaintiffs' view, requires that wheelchair patrons be provided comparable viewing angles to those afforded the general public. If plaintiffs are correct, then the Crossgates theaters plainly do not comply with the requirements of the ADA.

Defendant urges a much different construction. In defendant's view, the term "line of sight" merely means an unobstructed view. Under defendant's construction of the phrase, a theater complies with Section 4.33.3 when it provides wheelchair seating located among seating for the general public with sight lines to the screen that are no more obstructed for wheelchair patrons than they are for members of the general public.

Courts that have considered the meaning of this requirement have considered whether the term "line of sight" imposes a "viewing angle" requirement and found that it does not, noting that questions regarding viewing angles did not arise until well after the Guidelines were promulgated. *See, e.g., Lara v. Cinemark U.S.A., Inc.,* 207 F.3d 783, 788–89 (5th Cir.2000); *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.,* 142 F.Supp.2d 1293, 1296–97 (D.Or.2001); *United States v. Cinemark U.S.A., Inc.,* No. 99–CV–705 (N.D.Ohio November 19, 2001). These

courts have concluded that the "lines of sight" requirement of Section 4.33.3 requires only that wheelchair seating offer lines of sight that do not suffer from any obstructions, and does not impose any "viewing angle" requirement. *See Lara,* 207 F.3d at 789; *Oregon Paralyzed Veterans,* 142 F.Supp.2d at 1297.

The reasoning of these decisions, though persuasive, cannot be accepted without one caveat. The Guideline requirement that lines of sight be "comparable" requires more than that lines of sight for wheelchair patrons be simply unobstructed. The requirement that a line of sight be "comparable" clearly imposes a qualitative requirement that the sight line be "similar" and not merely "similarly unobstructed." As such, it is held that it would not be sufficient for defendant to merely provide lines of sight to the screen that are unobstructed.[4]

However, there are two factors in this case that compel the conclusion that the wheelchair seating at the Crossgates theaters complies with Section 4.33.3. First, defendant has not merely provided "unobstructed" wheelchair seating. Instead, defendant has located the wheelchair seating amongst the floor seating for the general public, thereby affording wheelchair patrons with viewing angles that are comparable to those afforded to a significant portion of the general public. Second, by its terms, Section 4.33.3 does not require more than one location for wheelchair seating in a theater with seating capacity that does not exceed 300, and it would defy logic to find defendant in violation of the ADA because it did not provide more seat-

ing locations than the Guidelines required. Accordingly, it is held that the wheelchair seating at the Crossgates theaters does provide lines of sight that are comparable to those afforded to the general public because it is located amongst seating for the general public and affords viewing angles comparable to those afforded to a significant portion of the general public.

### C. *Integral Part of Fixed Seating Plan*

Plaintiffs next contend that the wheelchair seating at the Crossgates theaters violates Section 4.33.3 because it is not an integral part of the fixed seating plan for all eighteen of the theaters. Plaintiffs contend that this is so because (1) Hoyts failed to make wheelchair seating an integral part of the fixed seating in the stadium-style seating, and (2) the wheelchair seating in the four larger theaters is clustered in "pens" or "corrals" at the back of those theaters.

Defendant asserts that it has made wheelchair seating an integral part of its fixed seating plan by incorporating wheelchair seating into the floor seating provided for the general public. Defendant notes that the "exception" contained in Section 4.33.3 expressly permits the clustering of wheelchair seating "for bleachers, balconies, and other areas having sight lines that require slopes of greater than 5 percent." As such, defendant argues that wheelchair seating need not be scattered throughout the stadium seating for the general public in order to be "integral." Defendant also argues that the railings at the rear of the four larger theaters are

---

4. This requirement is necessary to address the potential situation where a defendant has relegated wheelchair patrons to a portion of the theater that provided truly inferior viewing angles and limited or no seating for the general public—such as was the case at the start of this litigation where wheelchair patrons were relegated to the absolute worst seats at the

very front of the theaters. It would defy common sense to describe the lines of sight afforded by such viewing positions as "comparable" merely because they were unobstructed. Had Hoyts not undertaken the renovations to relocate the wheelchair seating at the Crossgates theaters, it would unquestionably have been in violation of the ADA.

required by local code and common sense to protect wheelchair patrons from the steep drop-off directly in front of those seating areas.

Defendant is correct. It is held that the wheelchair seating is an "integral" part of the fixed seating plan at the Crossgates theaters because such seating is incorporated into, and located among, the seating for the general public. *See Oregon Paralyzed Veterans*, 142 F.Supp.2d at 1298 n. 3. It is also held that the clustering of seating at the back of the four larger theaters is expressly permitted by the Guidelines and neither the clustering nor the railings violate the ADA.

### D. *Access to Stadium Seating*

Plaintiffs' next argument is that the Crossgates theaters violate the ADA because defendant did not provide wheelchair access to the stadium seating sections of fourteen of its theaters, in violation of the requirement that "[a]t least one accessible route complying with [ADAAG Section] 4.3 shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site." 28 C.F.R. Part 36, Appendix A, Section 4.1.2(2). By their plain language, the Guidelines do not impose any requirement that an accessible route be provided to areas that are not independently required to be accessible. Accordingly, plaintiffs' argument must be rejected because it has been held that Hoyts had no duty to provide seating in the stadium section of these theaters, and therefore, defendant had no duty to provide an accessible route to the stadium seating in the fourteen theaters with seating capacity that does not exceed 300.

### E. *Separate and Unequal Seating*

Plaintiffs' final argument is that the wheelchair seating at the Crossgates theaters violates the "full and equal enjoyment" requirement of ADA § 302. 42 U.S.C. § 12182(a). In doing so, plaintiffs are not merely interpreting Section 4.33.3, but instead are seeking to impose liability under ADA § 302. To the extent that the plaintiffs are arguing that Title III provides for liability based upon a violation of the "full and equal enjoyment" language of ADA § 302, it is noted that courts have correctly held that compliance with Section 4.33.3 *is* compliance with Title III of the ADA. *See United States v. National Amusements, Inc.*, 180 F.Supp.2d 251, 257–58 (D.Mass.2001); *Oregon Paralyzed Veterans*, 142 F.Supp.2d at 1298 n. 3. As such, plaintiffs' claims based upon a violation of ADA § 302 must be dismissed.

### V. *CONCLUSION*

The wheelchair seating at defendant Hoyts Cinemas Corporation's theaters at the Crossgates Mall in Albany, New York, now complies with the requirements of Section 4.33.3 of the Accessibility Guidelines for Buildings and Facilities, and does not violate the Americans With Disabilities Act.

Therefore, it is hereby

ORDERED that

1. Plaintiffs' motion for summary judgment is DENIED;

2. Defendant's motion for summary judgment is GRANTED; and

3. The amended complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.