Susan **MEINEKER** and **Sybil McPherson,** Plaintiffs–Appellants,

v.

**HOYTS CINEMAS CORPORATION,** Defendant–Appellee.

**Docket No. 02–9034.**

United States Court of Appeals, Second Circuit.

July 1, 2003.

Timothy A. Clune, Disability Advocates Inc., Albany, NY, for Appellants.

Michael J. Malone (Patricia A. Griffin, on the brief), King & Spalding, New York, NY, for Appellee.

Gregory B. Friel (Ralph F. Boyd, Jr., Assistant Attorney General; Jessica Dunsay Silver, Attorney, on the brief) United States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C., for the United States, William F. Krebs (Steven John Fellman; David K. Monroe, on the brief), Galland, Kharasch, Greenberg, Fellman & Swirsky P.C., Washington, D.C., for the National Association of Theatre Owners, Inc., for Amici Curiae.

PRESENT: KEARSE, CABRANES and STRAUB, Circuit Judges.

## SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT,**

BUT MAY BE CALLED TO THE AT-TENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 1st day of July, two thousand three.**

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is hereby **VACATED** and **REMANDED** for further proceedings consistent with this order.

In 1997 Hoyts Cinemas Corporation ("Hoyts")[1] opened a new cinema at Crossgates Mall in Albany, New York (the "Crossgates theaters"). The Crossgates theaters are a complex of eighteen movie theaters on two levels. All eighteen theaters have a combination of seating on a flat floor below the screen (*i.e.,* traditional sloped-floor seating) and "stadium-style" seating. The stadium-style seating consists of individual rows of seats placed on graduated tiers or steps. The District Court found that stadium-style seating occupies, on average, approximately seventy-percent of the available seating in the Crossgates theaters.

In fourteen of the eighteen theaters, with seating capacity for less than 300 patrons, wheelchair-accessible seating is offered only in the traditional sloped-floor seating area, and no wheelchair-accessible seating is offered in the stadium-style seating section. *See Meineker v. Hoyts Cinemas Corp.*, 216 F.Supp.2d 14, 15 (N.D.N.Y. 2002). In the four theaters that seat more than 300 patrons, wheelchair-accessible seating is located in the traditional sloped-floor seating area and in the last row of the stadium-style seating area. The seating in the rear of the stadium-style area is surrounded by metal railings required by the local building code and is separated from the rest of the stadium-style area.

At the time of construction, the seating for wheelchair-bound patrons in the traditional sloped-floor section was located immediately beneath the screen, in the front row of that section. After the commencement of this litigation, the wheelchair accessible seating was relocated to its current position at the rear of the traditional sloped-floor section of the theaters.

At the time the action was commenced, plaintiffs Susan Meineker[2] and Sybil McPherson were disabled persons who used wheelchairs and who patronized movies in the Crossgates theaters in late 1997. *Meineker*, 216 F.Supp.2d at 15. They commenced this action in 1998, alleging that the wheelchair-accessible seating at the Crossgates theaters violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq.*[3]

---

1. Hoyts has subsequently been purchased by Regal Cinemas, Inc., a wholly-owned subsidiary of Regal Cinemas Corporation, a wholly-owned subsidiary of Regal Entertainment Holdings, Inc., a wholly-owned subsidiary of Regal Entertainment Group, a publicly-traded Delaware Corporation. Supplemental Corporate Disclosure Statement of Hoyts, Apr. 4, 2003.

2. Susan Meineker died on February 8, 2002, six months before the District Court's summary judgment ruling in this case. Her estate has not yet been substituted for her as plaintiff, nor has the caption been amended.

3. Congress delegated to the United States Department of Justice ("DOJ") responsibility for issuing regulations to enforce the mandate of Title III of the ADA that "[n]o individual shall be discriminated against on the basis of dis-

The District Court granted summary judgment for defendant, concluding that the wheelchair-accessible seating in the Crossgates theaters, as modified during this litigation, complied with the requirements of § 4.33.3 of the Accessibility Guidelines for Buildings and Facilities (the "ADAAG") and did not violate the ADA.[4] *Meineker*, 216 F.Supp.2d at 19.

This timely appeal followed. On appeal, plaintiffs challenge the District Court's conclusion that the Crossgates theaters comply with the ADA. Plaintiffs argue principally that defendant failed to comply with § 4.33.3 by (1) failing to provide wheelchair-bound patrons with lines of sight comparable to those afforded the general public; and (2) failing to make wheelchair-accessible seating an integral part of the fixed seating plan.

\*    \*    \*    \*    \*    \*

We review a district court's decision on a motion for summary judgment *de novo*. *See Felix v. New York City Transit Authority*, 324 F.3d 102, 104 (2d Cir.2003). We construe all facts of record in the light most favorable to the non-moving party and identify whether any genuine issues of material fact remain for adjudication. *See Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996).

■■■ The District Court concluded that the defendant's obligation to provide wheelchair-bound patrons with comparable "lines of sight" under § 4.33.3, when read in conjunction with Title III of the ADA, requires an analysis of the viewing angles provided to the wheelchair-bound patrons and "clearly imposes a qualitative requirement that the sight line be 'similar' and not merely 'similarly unobstructed.'" *Meineker*, 216 F.Supp.2d at 18. The Court determined that defendants had afforded "wheelchair patrons with viewing angles that are comparable to those afforded to *a significant portion* of the general public," *id.* at 18 (emphasis added), and that accordingly, defendant had met is obligation under § 4.33.3.

The District Court also ruled that defendant had satisfied the requirement that the seating be an "integral part of [the] fixed seating plan" when it provided wheelchair-bound patrons with seating in the traditional sloped-floor section of the movie the-

ability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation." 42 U.S.C. § 12182(a). The DOJ, in conjunction with the Architectural and Transportation Barriers Compliance Board (the "Access Board"), issued ADA Accessibility Guidelines (the "ADAAG"). This litigation centers on the meaning of § 4.33.3 of the ADAAG.

4. Section 4.33.3 of the ADAAG states
Wheelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public. They shall adjoin an accessible route that also serves as a means of egress in case of emergency. At

least one companion fixed seat shall be provided next to each wheelchair seating area. When the seating capacity exceeds 300, wheelchair spaces shall be provided in more than one location. Readily removable seats may be installed in wheelchair spaces when the spaces are not required to accommodate wheelchair users. EXCEPTION: Accessible viewing positions may be clustered for bleachers, balconies, and other areas having sight lines that require slopes of greater than 5 percent. Equivalent accessible viewing positions may be located on levels having accessible egress. 28 C.F.R. Pt. 36, App. A, § 4.33.3 (alterations made); *see also* 28 C.F.R. §§ 36.406(a) ("New construction and alterations subject to this part shall comply with the standards for accessible design published as appendix A to this part (ADAAG)").

ater (in all theaters), and also in the last row of the stadium-style seating (in the four theaters that seat more than 300 patrons), "because such seating is incorporated into, and located among, the seating for the general public." *Meineker*, 216 F.Supp.2d at 19 (citing *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.*, 142 F.Supp.2d 1293, 1298 n. 3 (D.Or. 2001)).

On appeal, the United States Department of Justice ("DOJ"), appearing in the case for the first time as amicus curiae, set forth its interpretation of § 4.33.3 that differs from that made by the District Court. The DOJ argues that "[i]ndividuals who use wheelchairs [may not] ... be relegated to locations with viewing angles decidedly inferior to those available to *most* audience members [ ]" and that "[i]nstead, patrons in wheelchairs must be afforded viewing angles that are 'comparable'–in other words, similar or equivalent–to those enjoyed by most other members of the audience." Br. for the United States as Amicus Curiae at 12 (emphasis added). The DOJ has also construed the " 'integral' seating mandate of Standard 4.33.3 to require that theater operators provide wheelchair seating in the area of the theater where *most* members of the general public usually choose to sit." *Id.* at 25 (emphasis added). The DOJ noted that, "[i]n the typical stadium-style movie theater (as in all the stadium-style theaters at issue here), the overwhelming *majority* of patrons sit in the stadium section." *Id.*

The DOJ's submissions present, for the first time on appeal, two important questions: (1) whether the DOJ's interpretation of § 4.33.3–requiring lines of sight

comparable to those afforded to *most* of the general public and seating integral to the area where *most* of the general public chooses to sit–is entitled to deference, and (2) if its interpretation is entitled to deference, whether defendant received reasonable notice of that interpretation at the time of construction or renovation such that the DOJ's interpretation may be applied to the Crossgates theaters.[5]

A court must give deference to the interpretation of a regulation by the agency charged with enforcing that regulation unless that agency's interpretation is "plainly erroneous or inconsistent with" the regulation. *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). In this case "[t]he [DOJ's] views are entitled to deference" when interpreting Title III of the ADA because it is "the agency directed by Congress to issue implementing regulations, to render technical assistance explaining the responsibilities of covered individuals and institutions, and to enforce Title III in court." *Bragdon v. Abbott*, 524 U.S. 624, 646, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (internal citations omitted). "[U]nless an alternative reading is compelled by the regulation's plain language or by other indications of ... intent at the time of the regulation's promulgation," a court must defer to the agency's interpretation to the regulation at issue here. *Thomas Jefferson Univ.*, 512 U.S. at 512. However, as the Supreme Court has noted, "[d]eference to ... an agency's convenient litigation position [is] entirely inappropriate" where the agency's position is not a "reasoned and consistent view" and "is

---

5. The issue of notice is relevant not to whether deference is due to the DOJ's interpretation of § 4.33.3 (which is how the defendant frames the issue of notice in its brief), but rather, to whether for prudential or equitable reasons it would be unfair to give retroactive effect to an interpretation of a regulation which defendant did not receive adequate notice of.

contrary to the ... view ... advocated in past cases." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212–13, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *see Auer,* 519 U.S. at 462 (contrasting "fair and considered judgment[s]" with *"post hoc* rationalization[s]") (internal quotation marks omitted).

Several district courts have addressed the issue of deference to the DOJ's interpretation of § 4.33.3. *Compare United States v. Hoyts Cinemas Corp.,* 256 F.Supp.2d 73 (D.Mass.2003) (deferring to the DOJ's interpretation, denying defendant's motion for summary judgment and holding that *prospectively,* § 4.33.3 will be read to require that cinemas provide wheelchair-accessible seating in the stadium section and not exclusively in the traditional sloped-floor seating area or on access aisles), *appeal pending,* No. 03–1646 (1st Cir. argument scheduled for after July 31, 2003); *United States v. AMC Entm't, Inc.,* 232 F.Supp.2d 1092, 1112–13 & n. 19 (C.D.Cal.2002) (adopting the DOJ's interpretation and holding that a comparable "line[ ] of sight" must be similar to that afforded most of the general public); *Fiedler v. Am. Multi–Cinema, Inc.,* 871 F.Supp. 35, 39 (D.D.C.1994) (deferring to the DOJ's interpretation of § 4.33.3, denying summary judgment for defendant, and rejecting defendant's argument that clustering wheelchair-bound patrons in the back of the stadium-style seating section is permissible); *with Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.,* 142 F.Supp.2d 1293, 1296–97 (D.Or.2001) (declining to defer to the DOJ's interpretation and holding that a "line of sight" need only be unobstructed), *appeal pending,* No. 01–35554 (9th Cir. argued Dec. 2, 2002); and *United States v. Cinemark U.S.A., Inc.,* No. 1:99 Civ. 705, 2001 U.S. Dist. LEXIS 24418, at *21–*22 (N.D.Ohio Nov. 19, 2001) (same), *appeal pending,* No. 02–3100 (6th Cir. argued June 20, 2003).

In order to clarify the meaning of § 4.33.3, the Access Board, *see* note 3, *ante,* has issued a notice of proposed rulemaking that includes modifications to § 4.33.3. *See* 64 Fed.Reg. 62248, 62277–78 (proposed Nov. 16, 1999) (to be codified at 36 C.F.R. Pts. 1190 & 1191). As part of the proposed rulemaking, the Access Board stated the following with respect to the DOJ's position:

> [The] DOJ has asserted in attempting to settle particular cases that wheelchair seating locations must: (1) Be placed within the stadium-style section of the theater, rather than on a sloped floor or other area within the auditorium where tiers or risers have not been used to improve viewing angles; (2) provide viewing angles that are equivalent to or better than the viewing angles (including vertical, horizontal, and angle to the top of screen) provided by 50 percent of the seats in the auditorium, counting all seats of any type sold in that auditorium; and (3) provide a view of the screen, in terms of lack of obstruction (e.g., a clear view over the heads of other patrons), that is in the top 50 percent of all seats of any type sold in the auditorium. The Board is considering whether to include specific requirements in the final rule that are consistent with DOJ's interpretation of 4.33.3 to stadium-style movie theaters.

64 Fed.Reg. at 622778.

Because the issue of whether the DOJ's interpretation of § 4.33.3 is entitled to deference arose for the first time on appeal–when the DOJ entered the case as an amicus for the first time–we remand to the District Court to consider this issue in the first instance. Remand is particularly appropriate in this case because defendant argues that all of the evidence to which the DOJ points in support of its interpretation

is outside of the record on appeal. Additionally, defendant argues that it lacked reasonable notice of the DOJ's interpretation, an argument which requires factfinding as to the historical interaction between the DOJ and defendant. The parties' post-argument submissions raise complex factual issues that illustrate the need for further proceedings in the District Court. In response to our requests at oral argument, the DOJ, the National Association of Theater Owners ("NATO"), and defendant submitted letter briefs addressing the issue of deference to and notice of the DOJ's interpretation of § 4.33.3.

Whether the DOJ's position is entitled to deference and, if so, whether defendant had reasonable notice of the interpretation sufficient to require defendant to comply with it, are questions for the District Court to determine in the first instance. After permitting further discovery and motion practice the District Court should consider whether the DOJ's interpretation of § 4.33.3 represents a "fair and considered judgment" consistent with the history of the regulation, or rather whether the DOJ has proffered a *post hoc* rationalization or "convenient litigati[on] position" entitled to little deference. *See Auer,* 519 U.S. at 462; *Bowen,* 488 U.S. at 213. In addition, the District Court shall conduct further proceedings aimed at determining, *inter alia,* (1) Hoyts's notice of, and intent to comply with, the requirements of the ADA at the time of construction or renovation of the Crossgates theaters;[6] (2) Hoyts's position in previous legal communications (submitted to administrative or judicial entities) regarding lines of sight;[7] (3) the knowledge of Hoyts's architect at the time of construction or renovation of these facilities, including his understanding of lines of sight;[8] (4) the understanding of Hoyts's officials of the meaning of lines of sight;[9] (5) the industry's understanding of the terms used in § 4.33.3, including "comparable lines of sight" at the time of construction or renovation of these facilities;[10] and (6) customer seating preference data.

\*     \*     \*     \*     \*     \*

6. The District Court concluded that at fourteen of the eighteen Crossgates theaters, as originally designed and built, "wheelchair patrons were relegated to the absolute worst seats at the very front of the theaters" which were "unquestionably ... in violation of the ADA." *Meineker,* 216 F.Supp.2d at 18 n. 4.

7. On appeal, the DOJ provided us with a copy of a letter from Hoyts to Maine's Human Rights Commission in 1991 regarding its ability to comply with Maine's Human Rights law (and implicitly federal laws that also applied to Hoyts, including § 4.33.3, which was already in effect). In that letter, Hoyts endorsed the 1989 Society of Motion Picture and Television Engineers ("SMPTE") engineering guidelines as the "[i]ndustry standards regarding sightlines" and noted that "physical discomfort occurs when the vertical viewing angle to the top of the screen exceeds 35 degrees." DOJ Response to Supplemental Letter of Hoyts Cinema Corp. at Ex. F, pp. 2–3 (Apr. 30, 2003).

8. Raymond Gaudet, the architect for the Crossgates theaters, signed the 1991 letter from Hoyts to the Maine Human Rights Commission adopting the SMPTE engineering guidelines for sightlines (including viewing angles in the definition of sightlines).

9. The Hoyts Cinema Standards Manual from 1997 includes a diagram which states that a "30 degrees maximum" vertical viewing angle to the center of the screen should be maintained for the average seat because "[c]omfortable viewing angles are essential for good presentation and patron comfort." Hoyts Cinema Corp. Response Regarding Notice of the DOJ's 1994 letter at Ex. E, p. 2 fig. 3.2 (Apr. 30, 2003).

10. The industry-wide standards should be discernible from a review of, *inter alia,* publications or standards of NATO, publications prepared by major studios like Lucasfilm and other movie theater operators that indicate what the industry-wide understanding of lines

We hereby **VACATE** the judgment of the District Court and **REMAND** the cause for further proceedings consistent with this order.

of sight was, and SMPTE engineering guidelines. The 1989 SMPTE Engineering Guidelines are (1) the same guidelines that the DOJ relies on in its amicus briefs as evidence of the movie theater industry's understanding (when § 4.33.3 was implemented), and (2) referred to by Hoyts in its 1991 letter to the Maine Commission, where Hoyts said that viewing angles are an essential component of spectators' lines of sight.